## THE EXERCISE OF EMINENT DOMAIN BY A FOREIGN TELEPHONE COMPANY.

[Circuit Court of Putnam County.]

CENTRAL UNION TELEPHONE CO. v. VILLAGE OF COLUMBUS GROVE.

Decided, 1905.

*Eminent Domain—Pleading and Proof Necessary to Support Assumption of—Foreign Telephone Company may Exercise Right of, When—Provisions of Charter—Statutory Enactments.*

1. The right of eminent domain, involving as it does an attribute of sovereignty and an interference with private rights, must always be strictly construed; and the petition of a private corporation, claiming the right to exercise this power, must clearly set forth the grounds upon which its claims rest, and these allegations must be clearly proved.

2. In the absence of statutory provisions expressly conferring the right of eminent domain upon foreign corporations, interstate comity does not require that this right be extended to a foreign telephone company and there is no inherent power vested in such a company to condemn private property for purely local purposes and not as a part of an interstate system.

3. In a condemnation proceeding brought by a foreign telephone company, the petition must allege, not only that the petitioner is a corporation of its home state, duly created for the purpose of erecting and maintaining lines of telephone within such state, but also that by its charter it is empowered to appropriate private property therein; and in the absence of such averments the petition is bad on demurrer.

VOLLRATH, J.; NORRIS, J., and HURIN, J., concur.

Error to Putnam Common Pleas Court.

The plaintiff filed its petition in the Probate Court of Putnam County averring corporate capacity in the following language:

"The plaintiff, the Central Union Telephone Company, respectfully represents that it is a corporation duly created, organized, and existing under the laws of the state of Illinois, for the purpose of constructing, erecting, operating and maintaining lines of telephone and telephone exchanges within and without

said state of Illinois, and that it has likewise been duly authorized and empowered to ·construct, erect, operate and maintain lines of telephone and telephone exchanges within the state of Ohio, in accordance with the statutes of the state of Ohio, and it is so constructing, erecting, operating and maintaining lines of telephone and telephone exchanges in many cities and villages in said state of Ohio at this time.

"That by the statutes of said state of Ohio your petitioner, the plaintiff herein, is given and granted the right to use the lands authorized to be appropriated to the use of telephone companies, which lands are subject to the easement of streets, alleys, public ways, or other public uses within the limits of any city, or village, in said state of Ohio, and especially the right to use the land subjected to the easement of the streets, alleys, public ways or other public uses, within the incorporated village of Columbus Grove, Putnam county, Ohio, said village of Columbus Grove being a municipal corporation, organized and existing under the laws of the state of Ohio, located in the county of Putnam, in the said state, and being of the class of municipal corporations termed 'villages,' by the laws of the said state of Ohio, by entering thereon and therein, in accordance with the laws of said state of Ohio for the purpose of making preliminary surveys and using and occupying said streets, alleys, public ways, with poles, wires·and other necessary appliances for the purpose of constructing, erecting, operating and maintaining lines, telephones and telephone exchanges."

The plaintiff further alleges that in the establishment and conduct of its business it is necessary for it to use certain land within the village of Columbus Grove, subject to the easement of the streets, etc., of said village; that some time in July, 1903, plaintiff made application to the council of said village of Columbus Grove for an ordinance granting it the right to use said streets, etc., and presented a form of enactment to said council therefor; said council on September 21, 1903, rejected said ordinance, and that plaintiff and defendant are consequently unable to agree upon terms for such use although plaintiff claims to have made diligent effort to secure such agreement and that said council refuses to pass any ordinance as to the mode of use of said streets by plaintiff and that plaintiff is compelled, therefore, to apply to said court under authority of Section 3461, Revised Statutes, and ask that said court fix, determine and prescribe the mode of use of said streets, etc.,

by plaintiff, so that plaintiff may be authorized to construct, operate and maintain its said line of exchange over said streets, alleys, etc. Plaintiff, therefore, prays that a proper summons issue out of said court to require defendant to be present at a date named therein and show cause to the court why a finding, order and decree should not be made in the premises and that plaintiff may be authorized and empowered to construct, erect, operate and maintain the telephone line, telephone exchange and toll line in said defendant village as by the statutes of Ohio provided, and for other and further relief.

To this petition the defendant filed its demurrer upon the grounds:

1. That the plaintiff has not the legal capacity to sue.

2. That the court had no jurisdiction of the subject-matter of the action.

3. That the petition does not state facts sufficient to constitute a cause of action.

Upon a hearing in the probate court, the demurrer was sustained as to the first and third grounds. Error was prosecuted in the Court of Common Pleas of Putnam County, and upon a hearing in that court the judgment of the probate court was affirmed. Error is now prosecuted here to reverse said judgment of the court of common pleas.

The error, if any, in this case, arises from the action of the court in sustaining said demurrer and this presents several very interesting questions. As indicated in the petition, the plaintiff is an Illinois corporation and it seeks by the proceeding in the probate court to exercise the right of eminent domain in a municipality in the state of Ohio. This is attempted under Section 3461, Revised Statutes, which reads as follows:

"When any lands authorized to be appropriated to the use of a company are subject to the easement of a street, alley, public way, or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they can not agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley, or public way, so as not to

incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for· the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness.''

The "company" mentioned in the above section is defined in Section 3454, Revised Statutes, which reads as follows:

''A magnetic telegraph company heretofore or hereafter created may construct telegraph lines, from point to point, along and upon any public road, by the erection of the necessary fixtures, including posts, piers, and abutments necessary for the wires; but the same shall not incommode the public in the use of such road.''

By the terms of Section 3471, Revised Statutes, the provisions of the sections above named also apply to telephone companies.

It is claimed, however, that notwithstanding the sections cited, a foreign corporation may not exercise the right of eminent domain in this state, unless the right be expressly conferred by statute, and that the provisions cited not being; by express terms, made applicable to foreign corporations, they apply merely to local companies. It is claimed that this view is sustained by the act of our Legislature as expressed in Section 3399, Revised Statutes, expressly giving the right of eminent domain to railroad companies extending into, and through, this state even though foreign corporations. It is argued that the fact of such enactment but emphasizes the proposition that without it the railroad company could not exercise such right, and, therefore, as there is no similar section with reference to telephone companies, the latter also may not exercise this right.

In the case of *State* v. *Sherman*, 22 Ohio St., 411, 434, it is held that the policy of this state has been, and is, not only to permit, but to invite and encourage, ownership of railroads in this state by foreign companies on an equal footing with domestic companies. It was stated that to invite their co-operation in works of great public concern and then to discriminate against them in point of right to use and enjoy their right to property in the state would not only be unjust to them but unwise for the state.

"If any discrimination does exist," saith the court, "it is in regard to the power of condemning and appropriating private property to the use of the roads. In this case we find what we construe to be an express grant of that power. The Pennsylvania act incorporating the defendants [the Pittsburg, Ft. Wayne & Chicago Railroad Company] gives them power to condemn and appropriate private property," etc.

It will be noted that while in the above opinion the court places foreign and domestic corporations upon the same basis in all other matters so far as ownership and use of property is concerned, yet while it does not expressly deny, yet it does not concede to foreign corporations the right of eminent domain in this state where it is not expressly conferred. In the case, *State* v. *Sherman, supra,* the Legislature of Pennsylvania had empowered the defendant company to appropriate private property, and it was held by the court that in view of the provisions of Section 3399, Revised Statutes, above quoted, this power could be exercised by them in this state. This, however, does not answer the question with reference to the plaintiff in this case. There is no express law giving to foreign telephone companies the right of eminent domain in this state and especially for local purposes, and the right of eminent domain may not be presumed in favor of foreign corporations.

In the case of *Zanesville* v. *Telegraph & Tel. Co.,* 64 Ohio St., 67, 68, it is held that—

"Telephone companies organized under the laws of this state have the right, by virtue of Sections 3454, 3456-1 and 3471, Revised Statutes, to construct their lines along the streets and public ways of municipal corporations, in accordance with the order of the probate court made in pursuance of Section 3461."

Here again it will be noticed that the right to invoke this law, to-wit, Section 3461, Revised Statutes, is limited by this case to telephone companies organized under the laws of this state.

While the court does not expressly deny the right to foreign corporations, yet this decision includes merely domestic corporations.

The same idea appears in the body of the decision, to-wit, on pages 88 and 89, it is stated:

"It is competent for the state, through its legislative department, to grant to telephone and telegraph companies organized under its authority, the right to construct their lines in the streets of municipalities, and in the present instance the grant was so made."

Here again the line is drawn just this side of foreign corporations and the court apparently made an extra effort to avoid including foreign corporations in its deliberation over the rights of a domestic corporation.

It is evident from the foregoing that, to say the least, the courts in this state have not only failed to recognize the right of eminent domain in foreign corporations, unless expressly provided by statute, but apparently indicate that the right, if not absolutely denied, is yet of doubtful propriety and an unsettled quantity. The right of eminent domain involving, as it does, an attribute of sovereignty and interfering with private rights, must always be strictly construed and is always subject to the closest scrutiny. Every assumption of this right, where not conferred by statutory enactment with the judicial notice of the court, must be clearly plead and as clearly proven. This has been repeatedly held by our Supreme Court. Moreover, it is held in the case of *Atkinson* v. *Railway*, 15 Ohio St., 21, that corporate existence and the right to exercise the power of eminent domain can only be derived from legislative enactment; and before a company can demand a judgment of condemnation, it must show that such powers have been conferred upon it by a valid law and that it has substantially complied with the condition which the law has annexed to the exercising of the power.

It is held in *Coppin* v. *Greenlees*, 38 Ohio St., 275, 279, that a corporation possesses no powers except such as are conferred upon it by its charter, either by express grant or necessary implication; and this principle has been frequently declared by the Supreme Court of this state, and by no court more emphatically than by this court.

In this connection it may not be amiss to call attention briefly to the matter of the power which plaintiff seeks to execise in this case. As stated by our Supreme Court in *Giesy* v. *Railway*, 4 Ohio St., 308, 323:

"The power itself is an inseparable incident of sovereignty, and its exercise was delegated by the sovereign power to the General Assembly in the general grant of legislative authority. It may be defined to be, the right of the sovereign without the consent of the owner, when necessary, to make private property 'subservient to the public welfare.'

"It rests upon the public necessity (subordinates the rights of one to the welfare of all) and is just as broad as that necessity, and no broader."

When, therefore, a private corporation claims the right to exercise such power, its claims must not only be clearly proven but its petition must just as clearly set forth the grounds upon which its claims rest and which it must prove in order to sustain them, else the petition is obnoxious to the demurrer.

In the case at bar, the petition, while averring that the plaintiff is an Illinois corporation, created for the purpose of constructing, erecting, operating and maintaining lines of telephone, etc., within and without said state of Illinois, yet nowhere declares that it is empowered by its charter to condemn and appropriate private property. This seems to have been the saving feature in the case of *State* v. *Sherman*, 22 Ohio St., 411. The Pennsylvania act incorporating the Pittsburg, Ft. Wayne & Chicago Railroad Company gave it power to condemn and appropriate private property. Nothing of this kind appears in the petition before us. We consider, therefore, that the petition is defective in this particular and that the demurrer was properly sustained.

The further averments in the petition that plaintiff is authorized by the laws of Ohio to appropriate streets, etc., is rather gratuitous than otherwise in view of the condition of the laws of our state. We have no law expressly conferring upon foreign telephone corporations the right of eminent domain. Moreover, while the question is, perhaps, not squarely before us at this time, yet we are of the opinion that even if the averment were properly made, that the plaintiff in this case has the right of eminent domain by the terms of its charter, yet it could not, under the condition of our laws at this juncture, exercise that right in this state in the case at bar. The purpose for which the use of the streets in question is sought is local in its scope.

It does not appear that the extension of lines, poles, etc., to be erected and constructed is part of an interstate transportation system or anything of the kind. It is simply a local telephone exchange. We do not think that the comity between states extends to cases where foreign corporations in this state seek to· assume and exercise the attributes of sovereignty as against the private rights of the citizens of the state.

Holding these views, it is the judgment of this court that there is no error in the record before us and the judgment of the court of common pleas is, therefore, affirmed with costs.

*Long & Kyle,* for plaintiff in error.

*Handy & Unverferth,* for defendant in error.